IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

---

TERESA M. DOWNEY,

       Plaintiff,

    v.

THE COALITION AGAINST RAPE
AND ABUSE, INC., et al.,

      Defendants.

---

HONORABLE JEROME B. SIMANDLE

Civil No. 99-3370 (JBS)

**<u>OPINION</u>**

APPEARANCES:

Daniel C. Fleming, Esq.
Linda Wong, Esq.
WONG & FLEMING, PC
821 Alexander Road
Suite 150, P.O. Box 3663
Princeton, NJ 08543-3663
    Attorneys for Plaintiff

Susanna J. Morris, Esq.
BUDD LARNER, P.C.
1939 Route 70 East, Suite 100
Cherry Hill, NJ 08003
    Attorney for Defendants County of Cape May, Cape May County
    Board of Chosen Freeholders, Cape May County Office of the
    Prosecutor, and Stephen D. Moore

Frank L. Corrado, Esq.
BARRY, CORRADO, GRASSI & GIBSON, P.C.
2700 Pacific Avenue
Wildwood, NJ 08260
    Attorney for Defendants The Herald Newspapers and Joseph R.
    Zelnik

**SIMANDLE,** District Judge:

    This matter comes before the Court upon the application of

Defendants County of Cape May, Cape May County Board of Chosen

Freeholders, Cape May County Office of the Prosecutor ("County

Defendants") and Stephen D. Moore for attorneys' fees and costs pursuant to 42 U.S.C. § 1988, 28 U.S.C. § 1927 and N.J.S.A. 10:5-27.1.  Defendants Joseph Zelnik and The Herald Newspapers (collectively, "Newspaper Defendants") also move for an award of attorneys' fees pursuant to 42 U.S.C. § 1988 and 28 U.S.C. § 1927.  Finally, also before the Court is the motion of Plaintiff Teresa Downey for attorneys' fees pursuant to Fed. R. Civ. P. 11. For the reasons discussed below, the motion of the County Defendants and Defendant Moore will be denied.  The Court grants the Newspaper Defendants' motion for fees in part and denies Plaintiff's motion in its entirety.

## I.  <u>BACKGROUND</u>

The facts of this case are well-known to the parties.  The facts pertinent to the motions now before the Court are given here.  Plaintiff Teresa Downey filed a Complaint in this Court on July 14, 1999, for events relating to her termination as Executive Director of the Coalition Against Rape and Abuse, Inc. ("CARA").  Plaintiff is a former Executive Director of CARA, a nonprofit, publicly funded agency that counsels victims of sexual abuse and domestic violence.  Plaintiff alleged violations of the New Jersey Conscientious Employee Protection Act ("CEPA"), N.J.S.A. 34:19-1 <u>et</u> <u>seq</u>. (Count I), intentional interference with contract (Count II), violation of her federal constitutional rights under 42 U.S.C. § 1983 (Count III), defamation (Count IV),

2

breach of contract (Count V), breach of the implied covenant of good faith and fair dealing (Count VI), and a violation of the New Jersey Law Against Discrimination ("NJLAD"), N.J.S.A. 10:5-12(e), against her employer (Count VII) in addition to an aiding and abetting claim under the NJLAD against the other Defendants (Count VIII).  Plaintiff's § 1983 claim was the sole basis for this Court's jurisdiction.

After the filing of the Complaint, Defendants moved to dismiss Counts II, III, IV, VII and VIII pursuant to Fed. R. Civ. P. 12(b)(6).  On August 7, 2000, the Court dismissed Count IV (defamation), with prejudice, except to the extent that it involved events occurring after July 14, 1998 (the majority of Plaintiff's defamation allegations were found to be barred by the relevant statute of limitations), dismissed Counts II, III, VII and VIII without prejudice to re-pleading for being unclear and not plead with sufficient specificity, and finally, lacking a basis for this Court's jurisdiction at that point, dismissed the remainder of the Complaint pursuant to 28 U.S.C. § 1367(c)(3).

On September 7, 2000, Plaintiff sought leave to amend her Complaint, seeking to address this Court's concerns with regard to the pleading of the federal claims and to add a ninth count for civil conspiracy (Count IX) as well as a tenth count for conspiracy under 42 U.S.C. § 1985 (Count X) against all Defendants.  On May 2, 2001, this Court issued an Opinion that

3

allowed Plaintiff to file her Amended Complaint, but dismissed Plaintiff's claims brought under 42 U.S.C. §§ 1983 and 1985 (Counts III and X, respectively) as against Defendants Prosecutor Stephen Moore and Judge Raymond Batten, on the basis of qualified immunity.

Moreover, in its May 2, 2001 Opinion, this Court noted the perceived difficulties Plaintiff faced with her claims of defamation, due process, First Amendment retaliation, equal protection, as well as her § 1985 conspiracy claim and her state law conspiracy claim. This Court advised the parties that the facts as alleged in the Amended Complaint made it "exceedingly likely" that the controversy surrounding the grant application, and Plaintiff's involvement in it, constituted a public concern, which in turn would exempt all but knowingly false statements about Plaintiff from liability; that in order to establish her due process claim, she would have to show, among other facts, that the public official Defendants teamed up with the CARA Board with the intention that she be terminated from her position; that Plaintiff's equal protection claim, which was based on gender stereotyping, was suspect because "to argue essentially that the defendants terminated her employment because she was not 'female enough' (in stereotypical terms) is to argue that defendants inherently sought to replace her with a different woman, negating an essential element of a gender discrimination claim"; and that

Plaintiff's § 1985 claims must be premised on an alleged violation of her federal equal protection rights, which in this case were the equal protection violations based on gender stereotyping.  <u>Downey v. CARA</u>, 143 F. Supp. 2d 423, 441-46 (D.N.J. 2001).

Oddly enough, despite this Court's clear Order of May 2, 2001, ruling that Plaintiff's §§ 1983 and 1985 claims (Counts III and X) as against Defendants Moore and Batten were dismissed, when Plaintiff filed her Amended Complaint on May 9, 2001, both counts were nevertheless included again against these specific Defendants.  On August 6, 2001 and September 11, 2001, Plaintiff's counsel signed stipulations of dismissal, without prejudice, as to Counts III and X for both Defendants Batten and Moore and sought an Order from this Court to certify its May 2, 2001 decision as a final judgment pursuant to Fed. R. Civ. P. 54(d), which this Court declined to do by Order dated August 20, 2001.

On August 31, 2001, Defendant Batten filed a motion seeking to have the state tort claims that had been filed against him (Counts II, IV and IX) dismissed on the grounds that Plaintiff had not filed a Tort Claim Notice.  This Court issued its Opinion on March 27, 2002 regarding Plaintiff's state tort claims against Judge Batten and the protection offered by the New Jersey Tort Claims Act.  The Court concluded that because Plaintiff had

failed to make any showing that Judge Batten had acted outside his capacity as a Superior Court Judge with regard to his comments to her or about her, and because Plaintiff's claim of defamation and civil conspiracy to harm Plaintiff's reputation did not meet the Act's exceptions for crime, actual fraud, malice or willful misconduct, those claims did not constitute intentional torts.  Consequently, this Court held that Plaintiff's failure to file a Notice of Tort Claim barred her state law claims (Counts II, IV and IX) against Judge Batten.

After this Opinion was filed, Plaintiff, through counsel, was asked to dismiss Counts II, IV and IX against Defendant Moore in light of this Court's holding as to Defendant Batten and because Plaintiff had failed to file a Tort Claims Notice with regard to Defendant Moore as well.  (County Defendants' Ex. A, April 12, 2002 Letter of Susanna Morris.)  Plaintiff, however, was unwilling to do so.  (County Defendants' Ex. B, April 16, 2002 Letter of James Haney.)

On April 15, 2002, Plaintiff sought reconsideration of this Court's March 27, 2002 Order, which dismissed the state law claims against Judge Batten.  In addition, on October 15, 2002, Plaintiff sought reconsideration of this Court's May 2, 2001 Order, which dismissed Counts III (§ 1983) and X (§ 1985) of the Complaint against Defendants Moore and Batten.  At that time, Plaintiff also sought leave to amend the Complaint.

On December 24, 2002, this Court denied Plaintiff's motion to reconsider the previous dismissal of Counts II, IV and IX as to Judge Batten.  The Court also noted in its recitation of the procedural history of the case that:

> plaintiff's Amended Complaint filed on May 9, 2001, had attempted to reincorporate some of the same counts that had previously been dismissed in the May 2, 2001 Order, containing legally deficient allegations as if the May 2, 2001 Opinion and Order had not determined those issues.  (See Opinion 5/2/01 at 40-54.)  Plaintiff's attempt, one among many, to rehash and reargue the same issues does a disservice to the continued progress of this case.

(December 24, 2002 Opinion at 4.)  In an Opinion dated February 21, 2003, this Court also denied Plaintiff's motion for reconsideration of the May 2, 2001 Order, finding that Plaintiff had provided no new law or facts to support the claim for reconsideration.  The Court denied Plaintiff's request to amend her Complaint, finding that it would be futile to add the State of New Jersey as a defendant and because the motion followed repeated amendments and undue delay.  (See February 21, 2003 Opinion at pp. 43-44.)

Defendant Moore filed a motion for summary judgment with regard to Plaintiff's state law claims, which this Court granted on September 17, 2003.  The Court concluded that Plaintiff had failed to show that Defendant Moore had acted outside the scope of his duties; that Plaintiff's claim of defamation and civil

7

conspiracy to harm her reputation were not intentional torts;
and, as a result, the failure to serve a Tort Claim Notice on
Defendant Moore barred her claims.  The Court also found that
Plaintiff has failed to come forward with any evidence which
showed Defendant Moore had acted to encourage CARA in its
termination of Plaintiff and, as a result, dismissed the aiding
and abetting claim under the NJLAD (Count VIII).

The County Defendants and Defendant Moore also moved to bar
the testimony of Plaintiff's gender stereotyping expert, Dr.
Borgida, which this Court granted in its September 17, 2003
Opinion.  The Court noted that Plaintiff was advancing a "warped
variation of the sexual stereotyping theory . . . .  It strains
reason how Plaintiff's proposed stereotyping theory works to a
woman's disadvantage, considering this existing history of double
standards." (September 17, 2003 Opinion at p. 25.)  The Court
further noted that Dr. Borgida's opinion "does not fit the
elements of employment discrimination which Plaintiff must prove,
and it does not derive from the facts of this case." (Id.)

The County Defendants filed a motion for summary judgment on
the counts remaining - Counts III, IV, VIII and X – which was
granted by Opinion dated November 12, 2003.  In opposing this
motion, Plaintiff continued to argue that the County conspired
with the other Defendants to have CARA terminate her from her
position of employment.  This Court's November 12, 2003 Opinion

and Order also granted Defendant Raymond Batten's motion for
summary judgment on the sole count remaining against him, namely
Count VIII, thereby dismissing him from Plaintiff's case.

Meanwhile, Defendants Joseph R. Zelnik and the Herald
Newspapers brought a motion for summary judgment before the Court
on January 27, 2003.  This Court granted that motion in favor of
Defendants in its September 17, 2003 Opinion.  There, the Court
found that Downey was a "public figure," no evidence existed of
any conspiratorial agreement between Defendant Zelnik and the
other Defendants, the news articles in suit were incapable of
defamatory meaning, there was no evidence the articles were
published with "actual malice" and there was no evidence to
support the notion that Zelnik gender stereotyped Downey so as to
bring about her termination by CARA.  (September 17, 2003 Opinion
at pp. 46-99.)

Plaintiff has filed a Notice of Appeal on her entire case,
except as to Defendant CARA, with whom she settled.  The County
Defendants, Defendant Moore, the Newspaper Defendants and
Plaintiff now move for attorneys' fees.

## II.  <u>DISCUSSION OF LAW</u>

Under the "American Rule," all parties to litigation are
responsible for bearing the cost of their own attorneys.  Any
deviation from this general concept must be based on specific
statutory authorization or some other longstanding exception to

the rule.  <u>Alyeska Pipeline Service Co. v. Wilderness Society</u>,
421 U.S. 240 (1975).

Section 1988 of 42 U.S.C. – the attorneys' fee statute for
proceedings in vindication of civil rights violations brought,
<u>inter</u> <u>alia</u>, under 42 U.S.C. §§ 1983 and 1985 – provides for the
award of attorneys' fees and costs of litigation to successful
claimants in civil rights cases.  In relevant part § 1988 states:

> (b) Attorney's fees.  In any action or
> proceeding to enforce a provision of Sections
> 1977, 1977A, 1978, 1979, 1980 and 1981 of the
> revises statutes [42 U.S.C. §§ 1981-1983,
> 1985, 1986], . . . the court, in its
> discretion, may allow the prevailing party .
> . . a reasonable attorney's fee as part of
> the costs . . . .
>
> (c) Expert fees.  In awarding an attorney's
> fee under subsection (b) . . . the court, in
> its discretion, may include expert fees as
> part of the attorney's fee.

42 U.S.C. § 1988.  An application for the award of fees pursuant
to this statute is usually made by the prevailing plaintiff in a
case.  In <u>Christiansburg Garment Co. v. EEOC</u>, 434 U.S. 412, 421
(1978), however, the Supreme Court held that a plaintiff or
defendant may be a "prevailing party," but cautioned that when
awarding attorneys' fees to a prevailing defendant, the standard
is more stringent.  "[A] district court may in its discretion
award attorneys' fees to a prevailing defendant . . . upon a
finding that the plaintiff's action was frivolous, unreasonable,

or without foundation, even though not brought in subjective bad faith." Christiansburg, 434 U.S. at 421.

Moreover, in Barnes Found. v. Township of Lower Merion, 242 F.3d 151 (3d Cir. 2001), the Third Circuit outlined several factors that may be considered in determining whether to award attorneys' fees to a prevailing defendant: (1) whether the plaintiff established a prima facie case; (2) whether the defendant made a settlement offer; (3) whether the case was dismissed prior to trial; (4) whether the issue was one of first impression; and (5) whether there was a real threat of injury to plaintiff. Id. at 158.

The County Defendants and Defendant Moore also seek an award of attorneys' fees, as provided for by the New Jersey LAD:

> In any action or proceeding brought under the [LAD], the prevailing party may be awarded a reasonable attorney's fee as part of the cost . . . .

N.J.S.A. 10:5-27.1. While the NJLAD does allow for an award of attorneys' fees to the prevailing party, such fees are generally not appropriately awarded to a defendant absent a showing of bad faith. Ferraro v. City of Long Branch, 714 A.2d 945, 957 (N.J. Super. Ct. App. Div.), certif. denied, 724 A.2d 801 (N.J. 1998). Moreover, "[t]he award of attorneys' fees to a prevailing defendant is 'not routine' and should only 'be sparingly awarded.'" Hurley v. Atlantic City Police Dept., 933 F. Supp.

396, 427 (D.N.J. 1996) (quoting <u>Quiroga v. Hasbro, Inc.</u>, 934 F.2d 497 (3d Cir. 1991)).

Finally, both the County and Newspaper Defendants move for an award of attorneys' fees pursuant to 28 U.S.C. § 1927. Title 28 of the United States Code, Section 1927 states:

> Any attorney or other person admitted to conduct cases in any court or other person admitted to conduct cases in any court of the United States or any territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess cost, expenses and attorney's fees reasonably incurred because of such conduct.

28 U.S.C. § 1927.  A precondition to the imposition of attorneys' fees under this provision is a finding by the district court that the attorney acted in bad faith.  <u>See</u> <u>Baker Industries, Inc. v. Cerberus Ltd.</u>, 764 F.2d 204, 208 (3d Cir. 1985).

In evaluating the instant motions for attorneys' fees, this Court is mindful that zealous advocacy is not to be chilled by deviating from the American Rule absent a strong showing that such an award is appropriate.

A.   <u>County Defendants' Motion for Attorneys' Fees</u>

The County Defendants and Defendant Moore now seek attorneys' fees pursuant to 42 U.S.C. § 1988, N.J.S.A. 10:5-27.1 and 28 U.S.C. § 1927.  According to Plaintiff's Complaint, the County Defendants were alleged to be liable on Count II (intentional interference with contract), Count III (§ 1983),

Count IV (defamation), Count VIII (aiding and abetting LAD violations), Count IX (state conspiracy) and Count X (§ 1985). Over the course of litigating this matter, the County was dismissed from Counts II, IV and IX, leaving the following causes of action remaining at the time of summary judgment: Counts III, VIII and X.  As for Defendant Moore, following this Court's August 7, 2000 decision on the initial motion to dismiss and Plaintiff's subsequent amendment of her Complaint, the Court found it proper for Plaintiff to proceed on the following claims against Defendant Moore: Counts II, III, IV, VIII and IX.

Plaintiff did agree to dismiss Defendant Moore from Counts III and X upon request of opposing counsel, when it was apparent that the Amended Complaint had nonetheless included such claims following the Court's dismissal of same.  Counsel for Moore, however, also asked Plaintiff to dismiss him from the tort counts, namely Counts II, IV and IX, because the Court had dismissed the County entities, but not the individuals, from these same claims.  Plaintiff, however, refused, taking the position that Defendant Moore's conduct constituted intentional and overt acts which put the alleged unlawful conduct beyond the provisions of the New Jersey Tort Claim Act.

At the time counsel for Defendant Moore made this request, the law was not clear.  Indeed, the New Jersey Supreme Court did not address this issue of first impression until June of 2004.

13

See <u>Velez v. City of Jersey City, et al.</u>, 850 A.2d 1238 (N.J. 2004) (holding that for all claims filed before June 29, 2004, plaintiffs need not have filed a notice of tort claim as a prerequisite for pursuing intentional common law torts). Although this Court ultimately determined that the tort claims against Defendant Moore could not stand because they were not fairly characterized as intentional torts and were therefore barred by the New Jersey Tort Claims Act, at the time the request for dismissal was made, the Supreme Court had not yet ruled on this issue.  Therefore, it cannot be said that it was unreasonable for Plaintiff to refuse to voluntarily dismiss Defendant Moore from the tort claims originally alleged against him.

Moreover, Plaintiff's claims against the County Defendants and Defendant Moore survived a motion to dismiss and were not disposed of by this Court until September and November of 2003, when discovery had finally ended and the summary judgment motions were fully briefed.  It was not until that point that this Court, based on a thorough examination of the record evidence presented to it, determined that Plaintiff lacked evidence from which a reasonable jury could find against these defendants.  The Court is mindful that "it is important that a district court resist the understandable temptation to engage in <u>post</u> <u>hoc</u> reasoning by concluding that, because a plaintiff did not ultimately prevail,

14

his action must have been unreasonable or without foundation."
Christiansburg Garment Co., 434 U.S. at 421-22.  While Ms. Downey
may not have been able to present proofs and reasonable
inferences on her claims sufficient to withstand summary
judgment, the Court is unable to say that Plaintiff engaged in
frivolous or bad faith behavior in prosecuting her case against
the County Defendants.  Moreover, courts have held that the
"standard for finding frivolity or a lack of foundation therefore
must require something beyond that which is required for granting
either a motion to dismiss or a motion for summary judgment."
Solomen v. Redwood Advisory Co., 223 F. Supp. 2d 681, 684 (E.D.
Pa. 2002).

In considering the factors outlined by the Third Circuit in
Barnes Foundation as applied to the County Defendants, this Court
in unable to say that this is a case that warrants the unusual
award of attorneys' fees to a prevailing defendant pursuant to §
1988.  Here, Plaintiff survived a motion to dismiss in May 2001
and was given leave to amend her Complaint in accordance with the
Court's ruling.  So far as the Court is aware, the County
Defendants never offered to settle this matter[1] and the Court did

---

[1]As noted above, Plaintiff and her employer, Defendant CARA,
entered into a settlement of Plaintiff's wrongful
termination/breach of contract claim.  As exhaustive discovery
eventually demonstrated, there was no probative evidence of
actionable wrongdoing by any of the County Defendants.
Nonetheless, there was an interrelationship between the County
and its officials on the one hand, and CARA on the other, such as

not dismiss the matter until motions for summary judgment on the merits were before it.  While the § 1983 and § 1985 claims were not matters of first impression, issues surrounding the intentional tort claims alleged against Defendant Moore were not entirely clear.  Finally, the controversy was based sufficiently on a real threat of injury to Plaintiff, namely her termination from employment.  Therefore, this Court cannot fairly say that Plaintiff's claims were so frivolous as to warrant and award of attorneys' fees under § 1988.

In order to be awarded attorneys' fees under the NLJAD, the moving defendant must demonstrate bad faith on the part of the plaintiff in initiating and maintaining her lawsuit.  Here, despite the weakness of Plaintiff's claims, the Court is not persuaded that such bad faith was present.  Additionally, this Court is unable to say that Plaintiff unreasonably and vexatiously multiplied the proceedings as to warrant sanctions under 28 U.S.C. § 1927.  Although this Court expressed skepticism early on about Plaintiff's ability to ultimately prevail on a

---

the leasing of rent-free County office space to CARA and the County's funding of a portion of CARA's budget through grants, that it was not far-fetched for Plaintiff to explore the role, if any, of the various County actors in CARA's decision to terminate Ms. Downey's employment.  Defendants' point – that Plaintiff's case was essentially a standard employment termination case by a non-governmental employer sprinkled with meritless allegations of improper involvement of public officials – is well-taken and borne out by the outcome.  Nonetheless, at its essence as an employment case, the CARA settlement suggests the plausible merit to that small nucleus of Ms. Downey's allegations.

motion for summary judgment or at trial with her claims against the County Defendants and Defendant Moore, Plaintiff held a good faith belief that her allegations were colorable and cannot fairly be said to have brought those charges in an attempt to harass or annoy Defendants.  To impose sanctions in such a case would run the real risk of chilling attorneys' ability, if not mere willingness, to zealously advocate on behalf of their clients within the parameters of accepted standards of advocacy. It is lamentable that a great deal of public money and effort were expended by the County Defendants due to these overheated allegations that never panned out, but the standards for awarding reverse counsel fees are high and are not met by the County Defendants, although the question is close.  Thus, for these reasons, the Court denies the motion of the County Defendants and Defendant Moore for attorneys' fees pursuant to 42 U.S.C. § 1988, the NJLAD and 28 U.S.C. § 1927.

B.   Newspaper Defendants' Motion for Attorneys' Fees

Plaintiff alleged that the Newspaper Defendants conspired to defame her and deprive her of her First Amendment, equal protection and due process rights, bringing suit against them pursuant to 42 U.S.C. § 1983 and § 1985(3), as well as under the NJLAD and state common law.  Having been granted summary judgment on these claims in September of 2003, the Newspaper Defendants now seek an award of attorneys' fees pursuant to 42 U.S.C. § 1988

and 28 U.S.C. § 1927, arguing that Plaintiff's civil rights claims against the Newspaper Defendants were frivolous and brought in bad faith.  Defendants' motion for fees under § 1988 is expressly limited to Plaintiff's § 1985 conspiracy claim as well as to having to defend against Plaintiff's gender stereotyping theory as advanced under her equal protection claim brought pursuant to § 1983.[2]

To prevail on a § 1985(3) claim, Plaintiff was required to show a conspiracy (1) among two or more parties, with (2) the purpose of depriving a person of equal protection or equal privileges and immunities, with (3) an act in furtherance of the conspiracy, and (4) an injury to the person or property or deprivation of any right or privilege.  United Bhd. of Carpenters and Joiners of America, Local 610 v. Scott, 463 U.S. 825, 828-29 (1983).  Conspiracy requires, most importantly, an agreement by two or more persons, Kronefeld v. First New Jersey Nat. Bank, 638 F. Supp. 1454, 1469 (D.N.J. 1986), and the mere opportunity to conspire is insufficient.  Tose v. First Pennsylvania Bank, 648 F.2d 879, 894 (3d Cir. 1981).  Thus, to establish her conspiracy claims, Plaintiff had the burden of presenting evidence of an

---

[2]The Newspaper Defendants have limited their petition for fees under § 1988 to the equal protection claim brought by Plaintiff under § 1983 and do not appear to seek fees in connection with their defense against Plaintiff's First Amendment and due process claims as were also raised under that section. Moreover, Defendants Zelnik and The Herald Newspapers do not seek fees incurred in responding to Plaintiff's NJLAD claim.

agreement between Defendants Zelnik and The Herald Newspapers and
the other Defendants to punish her for her criticism of county
government.  Throughout the many years of litigating this case,
Plaintiff was never able to offer any facts demonstrating that
Zelnik, who is a newspaper reporter, conspired with anyone to
defame or stereotype her.  Plaintiff, at no point, possessed
anything more than her mere belief in the existence of secret
meetings and conspiratorial machinations on the part of
Defendants; Plaintiff discovered nothing to substantiate her
suspicions.  Indeed, this Court, in its September 17, 2003
summary judgment Opinion, ultimately found that there was "no
probability" that a reasonable jury could infer that Zelnik and
The Herald Newspapers had a meeting of the minds with Teresa
Downey's employer and other officials allegedly responsible for
her termination.  (September 17, 2003 Opinion at 83, 93-94.)
There was, in short, no evidence that the Newspaper Defendants
did anything other than gather the news of CARA's and Plaintiff's
difficulties, including the public criticisms directed at
Plaintiff, and report these items in the newspaper.

To be granted an award of fees, Defendants must show
Plaintiff maintained these claims when it was frivolous to do so
or did so in bad faith.  While this Court is unwilling to say
that Plaintiff maintained this claim in oppressive bad faith,
Plaintiff's allegation was nonetheless legally frivolous.

Deposition testimony offered no facts to support the allegations of her Amended Complaint and Plaintiff was left merely with her unsubstantiated belief in conspiratorial acts.  Indeed, even after conducting three and a half years of discovery, including approximately 200 hundred hours of depositions and the production of thousands of documents, Plaintiff set forth little to establish her claims, relying again instead upon her bare averments and beliefs.  The evidence Plaintiff was able to point to on summary judgment as support for her conspiracy claims indicated only that Zelnik had discussions with people of certain organizations, for newsgathering purposes.  "The deposition testimony and the other cited evidence raise[d] no issue as to whether Zelnik entered into an actionable conspiracy with any other person, as there is no mention of a purpose to denigrate, defame or cause the termination of Plaintiff."  (September 17, 2003 Opinion at p. 93.)  Plaintiff never came close to establishing a prima facie conspiracy case against these Defendants.  While Plaintiff correctly argues that she need not have had "smoking gun" evidence and was entitled to prove her claims through indirect or circumstantial evidence, Plaintiff was unable to shoulder even that liberal burden.  Discovery never provided Downey with factual evidence from which an agreement could be inferred, an essential element to her conspiracy claims.

Moreover, Plaintiff's theory of conspiracy suffered from

20

serious legal deficiencies, thereby rendering it frivolous.  With
respect to an action for conspiracy, "what is required in this
sensitive First Amendment area is proof not merely of separate
and distinct improper purposes by each [individual], proof not
merely of a joint purpose to publish, but specific evidence of a
joint purpose to defame." Dowd v. Calabrese, 589 F. Supp. 1206,
1214 (D.D.C. 1984).  Plaintiff thus should have realized that
Zelnik's contacts as a news reporter with official sources alone
could not state a conspiracy claim.  An award of attorneys' fees
for time spent in defending Plaintiff's allegations of conspiracy
is therefore appropriate under § 1988.

Defendants also seek fees for having to defend against
Plaintiff's "gender stereotyping" theory, which Plaintiff pleaded
as a violation of her equal protection rights pursuant to § 1983
and as a civil rights conspiracy under § 1985(3).  See Amended
Complaint, ¶¶82, 103-04.  Plaintiff failed to present prima facie
evidence of gender stereotyping, offering no evidence that
Zelnik's articles concerned her gender rather than her
"personality and management style," nor producing any evidence
that Zelnik or The Herald "occupied a supervisory position over"
Downey, or that they "provided substantial encouragement or
assistance to CARA to terminate her." (September 17, 2003
Opinion at 99-100.)  The Herald Newspapers' articles about
Plaintiff were neither workplace harassment nor employment

discrimination.  Absent this evidence, Plaintiff sought to tie the Newspapers' publication of expressed viewpoints on matters of public concern as being designed to cause the adverse employment action by her employer, CARA.  However, such an assertion that a newspaper reporter could be liable for "gender stereotyping" a public figure contravenes important First Amendment principles.  See American Booksellers, Inc. v. Hudnut, 771 F.2d 323, 327-28 (7th Cir. 1985), aff'd mem., 475 U.S. 1001 (1986).  It is not a fair characterization of the law to suggest that a public figure's critics are liable any time their "discriminatory" criticism has an adverse employment effect.

Ultimately, this Court found Plaintiff's theory to be without merit and excluded the report and testimony of her gender stereotyping expert, Dr. Eugene Borgida.  (Id. at 16-30.) Indeed, this Court determined that the theory and supporting expert opinion advanced by Plaintiff did "not fit the elements of employment discrimination" with which Plaintiff was charged to prove, nor did it "derive from the facts of this case." (September 17, 2003 Opinion at p. 25.)  The Court held that "there are no factual circumstances to which the gender stereotyping theory . . . could apply."  (Id. at p. 24.)  Thus, fees are appropriate under § 1988 as they relate to the Newspaper Defendants' defense against this theory as well.

Having said this, however, it is clear to this Court that Plaintiff did not unreasonably or vexatiously multiply the proceedings in this case by acting in bad faith, as required for shifting fees under § 1927. Although her claims were ultimately determined to be without merit, this Court believes that Plaintiff sincerely believed in the allegations she made throughout this litigation. Having been terminated from employment by CARA, Plaintiff saw demons lurking behind every tree and was unable to see this case for what it was at its heart, namely a contract dispute with her former employer. Plaintiff maintained, both during discovery and at the time that Defendants' motion for summary judgment was before this Court, that the evidence supported her contentions, even though this Court ultimately disagreed. Therefore, the Court is unwilling to impose sanctions under § 1927.

To summarize, this Court finds the Newspaper Defendants' motion for attorneys' fees to be proper solely as it is brought pursuant to 42 U.S.C. § 1988. As Plaintiff has indicated that she "will have a legal basis to object to the specific line-items of the fee applications should the Court grant the motion," this Court will permit additional limited briefing on the fee application amounts sought with respect to Zelnik and The Herald Newspapers' defense of the civil conspiracy and gender stereotyping-based equal protection claims.

Mr. Frank L. Corrado, Esq., attorney for Defendants Zelnik and the Herald Newspapers, has provided this Court with an Affidavit pursuant to Local Civil Rule 54.2 along with accompanying exhibits [Docket Item No. 191-1], detailing the fees and costs requested in connection with the instant motion.  To determine the exact dollar amount to be awarded as appropriate attorneys' fees, this Court will require a more specific breakdown of the time and effort expended by counsel on the specific claims for which this Court has determined a fee award to be appropriate.  Counsel states that it is his "good faith estimate that approximately 40% of [the total amount claimed] was spent dealing with plaintiff's civil rights claims against Zelnik and the Herald."  (Certification of Frank L. Corrado).  To the extent that Mr. Corrado can do so, he will be required, through a Supplemental Affidavit pursuant to Local Civil Rule 54.2, to detail for the Court and Plaintiff those time entries, or portions thereof, that are directly attributable to time spent addressing Plaintiff's civil conspiracy and gender stereotyping equal protection claims.  His Supplemental Affidavit shall exclude time entries for services devoted primarily to other (non-recoverable) issues, such as defending against Plaintiff's defamation claims.  Where an entry includes time for recoverable and non-recoverable services, Mr. Corrado shall do his best to determine the covered portion by good faith estimate.  Because

24

this Court has determined that an award of fees pursuant to 28 U.S.C. § 1927 is inappropriate, counsel should confine his Supplemental Affidavit to those entries representing time spent on the issues this Court has deemed appropriate for fee shifting under 42 U.S.C. § 1988.

Therefore, the Court grants Mr. Corrado a period of fifteen (15) days from the date of this Order to provide his Supplemental Affidavit.  Plaintiff will then have an additional period of fifteen (15) days in which to voice opposition, if any, to these line item requests.

C.    <u>Plaintiff's Rule 11 Motion</u>

Plaintiff, in response to the motion by the County and Newspaper Defendants, has filed a motion pursuant to Rule 11, Fed. R. Civ. P., for attorneys' fees.  Plaintiff's motion is apparently based on Rule 11(b)(1) which prohibits presentation of a motion for "any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation."  Fed. R. Civ. P. 11(b)(1).  "Rule 11 sanctions are appropriate only in the exceptional circumstance where a claim or motion is patently unmeritorious, or frivolous."  <u>In re Cendant Corp.</u>, 96 F. Supp. 2d 403, 405 (D.N.J. 2000) (internal quotes and citations omitted).  Here, both sets of Defendants' motions for attorneys' fees contain arguments that are well grounded in both law and fact.  Moreover, Plaintiff points to no facts that even

remotely suggest these fee applications to be so patently frivolous as to be improper.  Therefore, this Court will deny Plaintiff's motion for attorneys' fees pursuant to Rule 11.

### III.  CONCLUSION

Thus, for the reasons discussed above, this Court denies the motion for attorneys' fees of the County Defendants and Defendant Stephen Moore.  In addition, Plaintiff's motion under Fed. R. Civ. P. 11 is denied.  The Court grants the Newspaper Defendants' motion insofar as the application for fees is made pursuant to 42 U.S.C. § 1988 only with respect to Plaintiff's civil rights conspiracy and gender stereotyping claims against Zelnik and The Herald Newspapers, and will permit additional briefing on the limited issue of these Defendants' line item requests for fees consistent with this Opinion.  The accompanying Order is entered.


      **April 27, 2005**                    **s/ Jerome B. Simandle**
DATE                                 JEROME B. SIMANDLE
                                     United States District Judge

26