IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| TERESA M. DOWNEY,<br><br>          Plaintiff,<br><br>     v.<br><br>THE COALITION AGAINST RAPE<br>AND ABUSE, INC., et al.,<br><br>          Defendants. | HONORABLE JEROME B. SIMANDLE<br><br>Civil No. 99-3370 (JBS)<br><br>**OPINION** |

APPEARANCES:

Daniel C. Fleming, Esq.
Linda Wong, Esq.
WONG & FLEMING, PC
821 Alexander Road
Suite 150, P.O. Box 3663
Princeton, NJ 08543-3663
     Attorneys for Plaintiff

Frank L. Corrado, Esq.
BARRY, CORRADO, GRASSI & GIBSON, P.C.
2700 Pacific Avenue
Wildwood, NJ 08260
     Attorney for Defendants The Herald Newspapers and Joseph R.
     Zelnik

**SIMANDLE**, District Judge:

This matter comes before the Court upon the application of
Defendants Joseph Zelnik and The Herald Newspapers (collectively,
"Newspaper Defendants") for an award of attorneys' fees pursuant
to 42 U.S.C. § 1988.  The Court has reviewed Defendants'
submissions concerning the amount of fees and expenses incurred,
and Plaintiff Teresa Downey's opposition and finds that the
reasonable fees and costs which Plaintiff must pay are $30,607.50

in attorneys' fees and $2,269.77 in costs to the Newspaper Defendants, for the reasons now discussed.

I.    **BACKGROUND**

The facts of this case are well-known to the parties and were discussed in greater detail in this Court's related Opinion of April 27, 2005.  The facts pertinent to the application for fees now before the Court are given here.  Plaintiff Teresa M. Downey filed a Complaint in this Court on July 14, 1999, for events relating to her termination as Executive Director of the Coalition Against Rape and Abuse, Inc. ("CARA").  Plaintiff is a former Executive Director of CARA, a nonprofit, publicly funded agency that counsels victims of sexual abuse and domestic violence.  Plaintiff alleged violations of the New Jersey Conscientious Employee Protection Act ("CEPA"), N.J.S.A. 34:19-1 et seq., the New Jersey Law Against Discrimination ("NJLAD"), N.J.S.A. 10:5-12(e), civil rights and civil rights conspiracy violations under 42 U.S.C. §§ 1983 and 1985 as well as for contractual claims.  Plaintiff also filed claims against others whom she alleged acted in concert with CARA to violate her rights, including the County of Cape May, its Board of Chosen Freeholders, the County's Office of the Prosecutor, Prosecutor Stephen Moore and Judge Raymond Batten for the above stated claims as well as for aiding-and-abetting sex discrimination under the NJLAD and for defamation.  Plaintiff also filed claims

2

against Defendant Joseph Zelnik and The Herald Newspapers for
defamation, civil rights conspiracy violations under 42 U.S.C. §§
1983 and 1985 and aiding-and-abetting sex discrimination under
the NJLAD.  Plaintiff later filed an Amended Complaint on May 9,
2001 after being granted leave to do so by the Court.  The
Newspaper Defendants were prevailing parties, after four years of
tortuous litigation, on all claims.  After Plaintiff appealed
from all dispositive orders in this case, the Court of Appeals
recently affirmed, finding this Court's "reasoning and analysis
compelling and without error."  <u>Downey v. The Coalition Against
Rape and Abuse, Inc., et al.,</u> App. No. 04-3029 (3d Cir. Aug. 30,
2005), slip op. at 3.

On June 28, 2004, the Newspaper Defendants filed a motion
for fees and sanctions, together with accompanying affidavit and
exhibits, against Plaintiff and her counsel pursuant to 42 U.S.C.
§ 1988 and 28 U.S.C. § 1927.  By Order dated April 27, 2005, this
Court granted that motion in part "insofar as that motion was
brought pursuant to 42 U.S.C. § 1988 with respect to defending
against Plaintiff's claims of civil rights conspiracy and gender
stereotyping."  (April 27, 2005 Order.)

In the original motion for fees, Frank L. Corrado, Esq.,
counsel for the Newspaper Defendants, estimated that
approximately forty percent of the amount claimed was spent
dealing with Plaintiff's civil rights related claims against

Zelnick and the Herald.  This Court determined that it would require a more precise breakdown and estimation of time actually expended on these issues.  Moreover, Plaintiff indicated in the briefing on the original fee motion that she would have a legal basis to object to the specific line-item entries of Mr. Corrado's fee application, should the Court grant the Newspaper Defendants' motion.  Thus, the Court requested that Mr. Corrado file a Supplemental Affidavit, pursuant to L. Civ. R. 54.2, and:

> detail for the Court and Plaintiff those time entries, or portions thereof, that are directly attributable to time spent addressing Plaintiff's civil conspiracy and gender stereotyping equal protection claims. [The] Supplemental Affidavit shall exclude time entries for services devoted primarily to other (non-recoverable) issues, such as defending against Plaintiff's defamation claims.  Where an entry includes time for recoverable and non-recoverable services, Mr. Corrado shall do his best to determine the covered portion by good faith estimate.

(April 27, 2005 Opinion at 24.)  Thus, this Court limited the Newspaper Defendants' application for fees to Plaintiff's claims brought pursuant to 42 U.S.C. §§ 1983 and 1985 with regard to issues of conspiracy and gender stereotyping.  Moreover, the Court declined to permit fees pursuant to 28 U.S.C. § 1927 and requested that counsel "confine his Supplemental Affidavit to those entries representing time spent on the issues this Court has deemed appropriate for fee shifting under 42 U.S.C. § 1988." (Id. at 25.)

4

## II.  <u>DISCUSSION</u>

Under the "American Rule," all parties to litigation are responsible for bearing the cost of their own attorneys.  Any deviation from this general concept must be based on specific statutory authorization or some other longstanding exception to the rule.  <u>Alyeska Pipeline Service Co. v. Wilderness Society</u>, 421 U.S. 240 (1975).

Title 42, United States Code, Section 1988 – the attorneys' fee statute for proceedings in vindication of civil rights violations brought under 42 U.S.C. §§ 1983 and 1985 – as well as the NJLAD – provide for the mandatory award of attorneys' fees and costs of litigation to successful claimants in civil rights cases.  In relevant part § 1988 states:

> (b) Attorney's fees.  In any action or proceeding to enforce a provision of Sections 1977, 1977A, 1978, 1979, 1980 and 1981 of the revises statutes [42 U.S.C. §§ 1981-1983, 1985, 1986], . . . the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee as part of the costs . . . .
>
> (c) Expert fees.  In awarding an attorney's fee under subsection (b) . . . the court, in its discretion, may include expert fees as part of the attorney's fee.

42 U.S.C. § 1988.

In its Opinion and Order of April 27, 2005, this Court determined that the Newspaper Defendants were entitled to pursue an application for fees and costs incurred in defending against

Plaintiff's civil conspiracy and gender stereotyping-based equal protection claims.[1]  The Court now considers the Newspaper Defendants' fee petition with respect to those causes of action.

### A.  Standard for Computing Fee Awards

The "starting point" for determining what attorneys' fees are reasonable in any case under 42 U.S.C. § 1988 is to calculate a "lodestar" amount; "that is, the number of hours reasonably expended multiplied by a reasonable hourly rate."  Blakey v. Cont'l Airlines, Inc., 2 F. Supp. 2d 598 (D.N.J. 1998) (quoting Hensley v. Eckerhart, 461 U.S. 424, 433 (1983)).  When calculating the lodestar, the district court must "carefully and critically evaluate the hours and the hourly rate set forth by counsel."  Blakey, 2 F. Supp. 2d at 602.  Then, the lodestar formula is presumed to yield a reasonable attorneys' fee which is "adequate to attract competent counsel, but which does not produce a windfall to attorneys."  Washington v. Philadelphia County Court of Common Pleas, 89 F.3d 1031, 1035 (3d Cir. 1996) (citing Burlington v. Dague, 505 U.S. 557 (1992)); Public

---

[1]  Although the Newspaper Defendants prevailed upon all claims, and incurred legal expenses in doing so amounting to $141,140.15 through June 28, 2004, see Corrado Aff. (July 15, 2004) at ¶ 14, this Court found that only Plaintiff's pursuit of the civil conspiracy and gender stereotyping claim against the Newspaper Defendants met the heightened standard for awarding fees to a prevailing defendant under 42 U.S.C. § 1988 because of the lack of any reasonable basis in fact or law for these particular claims.

<u>Interest Research Group of N.J., Inc. v. Windall</u>, 51 F.3d 1179, 1185 (3d Cir. 1995).

The party seeking the attorneys' fees has the burden to prove that the request is reasonable. <u>Rode v. Dellaciprete</u>, 892 F.2d 1177, 1183 (3d Cir. 1990).  The party must submit evidence to support the hours worked and the rates claimed so that the court does not need to speculate as to how the attorneys used their time. <u>Keenan v. City of Philadelphia</u>, 983 F.2d 459, 473 (3d Cir. 1992).  The court has great discretion in deciding what attorneys' fees are reasonable in a case, but cannot "decrease a fee award based on factors not raised at all by the adverse party." <u>Rode</u>, 892 F.2d at 1183 (quoting <u>Bell v. United Princeton Props., Inc.</u>, 884 F.2d 713, 720 (3d Cir. 1989)).  Yet, while the adverse party's objections must be clear, they do not need to challenge every specific time entry believed to be unreasonable or unnecessary. <u>Bell</u>, 884 F.2d at 720.

The lodestar method thus requires the Court to undertake a three-step analysis: (a) determine a reasonable hourly rate, multiply it by (b) the number of hours reasonably expended, considering the adverse party's objections, and (c) decide whether any final adjustment is warranted. <u>See Hensley</u>, 461 U.S. at 433.

1.   **Reasonable Hourly Rate**

The first step in applying the lodestar formula is to determine the appropriate hourly rate.  Cityside Archives, Ltd. v. N.Y. Health and Hosp. Corp., 37 F. Supp. 2d 652, 658 (D.N.J. 1999).  The party seeking the rate, here the Defendants, bears the burden of producing sufficient evidence of what constitutes a "reasonable market rate for the essential character and complexity of the legal services rendered."  Evans v. Port Auth. of N.Y. and N.J., 273 F.3d 346, 361 (3d Cir. 2001) (quoting Smith v. Philadelphia Housing Auth., 107 F.3d 223, 225 (3d Cir. 1997)).  A reasonable market rate also depends on the "experience and skill of the attorneys" and on the rates for "similar services by lawyers of reasonably comparable skill, experience, and reputation."  Rode, 892 F.2d at 1183.  Once the applicant has made a prima facie showing of a reasonable hourly rate, the opponent may contest the rate, "but only with appropriate record evidence."  Evans, 273 F.3d at 361.  With such evidence, the court has great discretion to adjust the rate.  Id.  Without such evidence, the applicant "must be awarded attorneys' fees at [its] requested rate."  Id.

Here, Frank L. Corrado, Esquire, attorney for the Newspaper Defendants, seeks payment for his time at an hourly rate of $175/hour, which represents his contract rate for services

rendered in this matter.[2]  The Court finds this hourly rate to be reasonable, particularly given that an attorney of Mr. Corrado's education, experience, and skill would normally charge a substantially higher rate for the services performed in such a case.  At this rate, the efficiencies that experienced counsel are expected to demonstrate will also be required in assessing the time reasonably expended, to which the Court now turns.

### 2.   __Time Reasonably Expended__

The second step in the calculation of the lodestar requires the court to determine what time was reasonably expended on the matter.  Cityside, 37 F. Supp. 2d at 658 (citing Windall, 51 F.3d at 1188).  Hours that are not reasonably expended – those which are excessive, redundant, or otherwise unnecessary – are not compensated by the court.  Hensley, 461 U.S. at 433; Rode, 892 F.2d at 1183.  In contrast, time is compensated if it is reasonably expended for work that is "useful and of a type ordinarily necessary to secure the final result obtained from the litigation."  Cityside, 37 F. Supp. 2d at 658 (quoting Pennsylvania v. Del. Valley Citizens' Council for Clean Air, 478 U.S. 546, 560-61 (1986)).

---

[2] Mr. Corrado is being reimbursed in this case by the insurance carriers for the Herald Newspapers, Media Professional Insurance of Kansas City, Missouri and GE Employees Reinsurance Corp. of Overland Park, Kansas at a contract rate of $175/hour. Mr. Corrado's current rate for such services is generally $300/hour.  (Supplemental Affidavit of Frank L. Corrado, Esq., ¶30.)

Mr. Corrado requests payment for 151 hours of his time expended in defending against Plaintiff's conspiracy or gender stereotyping claims.  In addition, Mr. Corrado requests payment for an additional 23.9 hours for preparation of the instant fee application.

### a.  __Motion Practice__

From August 14 through September 20, 1999, Mr. Corrado spent 34.2 hours researching and drafting his brief in support of the motion to dismiss Plaintiff's Complaint.  Of that time, Mr. Corrado estimates that three (3) hours was spent working on conspiracy or gender stereotyping issues.  (Corrado Supp. Aff. at ¶8.)  Also, on August 15, 1999, Mr. Corrado spent four (4) hours researching several legal issues, including the issue of "civil rights conspiracy," and estimates that one (1) hour of that time was spent researching the relevant conspiracy issue.  (Id. at ¶9.)

From November 22 through December 6, 1999, Mr. Corrado spent 17.7 hours researching and drafting his reply brief in support of the motion to dismiss Plaintiff's Complaint.  He estimates that two (2) hours were spent addressing conspiracy or gender stereotyping issues.  (Id. at ¶10.)

Between September 13 and October 5, 2000, Mr. Corrado spent 15.7 hours researching and preparing his opposition to Plaintiff's motion for leave to file an amended complaint.  He

estimates that he spent ten (10) of those hours addressing conspiracy or gender stereotyping issues.  (<u>Id</u>. at ¶11.)  As this Court recalls, the bulk of that brief was devoted to the insufficiency of Plaintiff's conspiracy claim against the Newspaper Defendants.  In addition, on May 8, 2001, Mr. Corrado spent three (3) hours researching the law of civil rights conspiracy in preparing his Answer to Plaintiff's Amended Complaint.  (<u>Id</u>. at ¶12.)

Between August 5, 2002 and January 24, 2003, Mr. Corrado spent 90.1 hours researching and drafting his motion for summary judgment, together with supporting briefs and compiling related documentation.  He estimates that he spent twenty-five (25) hours of that time addressing Plaintiff's conspiracy or gender stereotyping claims.  (<u>Id</u>. at ¶27.)  Between February 24, and March 19, 2003, Mr. Corrado spent 20.5 hours preparing for, and arguing the Herald Newspapers' summary judgment motion and estimates that six (6) hours of that time is properly attributable to Plaintiff's conspiracy or gender stereotyping claims.  (<u>Id</u>. at ¶28.)

This Court finds nothing excessive about the amount of time Defendants' counsel spent on motion practice in this case and accepts counsel's good faith estimations of that portion of time which is fairly attributable to the legal issues for which this Court has previously deemed to be appropriate for fee recovery in

this case.  (<u>See</u> April 27, 2005 Opinion.)  If anything, these figures underestimate the portion of Mr. Corrado's time devoted to the issues presently at play.

**b.   <u>Discovery/Depositions</u>**

Between July 3 and July 17, 2001, in preparing Rule 26 disclosures and propounding initial discovery, Mr. Corrado spent 8.5 hours reviewing 42 U.S.C. §§ 1983 and 1985 as well as researching the law of conspiracy and of sexual stereotyping. (<u>Id</u>. at ¶13.)  In addition, between August 3 and August 14, 2001, Mr. Corrado recorded 4.5 hours in reviewing Plaintiff's 3000-page document production.  He estimates that two (2) hours of that review were devoted to documents that bore on Plaintiff's conspiracy allegations.  (<u>Id</u>. at ¶14.)

Between September 17, 2001 and February 22, 2002, Mr. Corrado spent 83.4 hours preparing for, taking and reviewing the deposition testimony of Teresa Downey.  That deposition lasted for six days and Mr. Corrado estimates that twenty (20) hours of his time was spent addressing or considering facts that bore on the issues of conspiracy or gender stereotyping.  (<u>Id</u>. at ¶15.) In addition, on March 27 and April 1, 2002, Mr. Corrado spent four (4) hours reviewing deposition testimony that bore on Plaintiff's conspiracy claims and discussing that evidence with CARA's attorney.  (<u>Id</u>. at ¶16.)

On April 10 and 11, 2002, Mr. Corrado spent 7.2 hours preparing for and attending the depositions of Peggy Kehs of the Division of Youth and Family Services, estimating now that three (3) hours of that time were spent addressing facts that bore on the conspiracy issue. (Id. at ¶17.) Between April 19 and 30, 2002, Mr. Corrado spent 14.5 hours preparing for and attending the deposition of Patricia Devaney, estimating that he spent seven (7) hours addressing facts that bore on the issues of conspiracy and gender stereotyping. (Id. at ¶18.) Between April 21 and 29, 2002, and on August 8 and 12, 2002, Mr. Corrado spent 15.5 hours preparing for and attending the deposition of Kyran Connor, estimating that ten (10) hours were spent addressing facts that bore on the issues of conspiracy or gender stereotyping. (Id. at ¶19.)

On May 7, May 8, and May 23, 2002 and on July 25, 2002, Mr. Corrado spent 18.4 hours preparing for, attending and reviewing the deposition of Stephen D. Moore, the former Cape May County prosecutor. He estimates that he spent ten (10) hours of that time addressing facts relating to the issues of conspiracy and gender stereotyping. (Id. at ¶20.) On May 7, May 9 and May 21, 2002, and on September 11 and September 12, 2002, Mr. Corrado spent 15.4 hours preparing for, attending and reviewing the deposition of Cape May County Freeholder Gerald Thornton, estimating that he spent ten (10) hours addressing facts that

13

bore on the issues of conspiracy or gender stereotyping. (Id. at ¶21.)  On May 7, May 10, May 28 and August 22, 2002, Mr. Corrado spent 17.4 hours preparing for, attending and reviewing the deposition of Raymond Batten, estimating that he spent ten (10) hours addressing facts relevant to the conspiracy and gender stereotyping issues. (Id. at ¶22.)

On June 11, June 12, July 16, July 31, August 1, August 28 and September 6, 2002, Mr. Corrado spent 17.2 hours preparing for, attending and reviewing the deposition of Eileen Fausey, former CARA president.  He estimates that he spent six (6) hours addressing facts that bore on the issues of conspiracy or gender stereotyping. (Id. at ¶23.)  On June 28, July 26, July 29, July 30 and August 28, 2002, Mr. Corrado spent 4.7 hours preparing for, attending and reviewing the deposition fo Eva Pagano, DAG, estimating that he spent 1.5 hours addressing facts related to Plaintiff's conspiracy and gender stereotyping claims. (Id. at ¶24.)  On July 9, July 17, July 18, August 19 and August 20, 2002, Mr. Corrado spent 18.5 hours in connection with the deposition of Louise Lloyd of CARA, estimating that five (5) hours were spent on the issues of conspiracy or gender stereotyping. (Id. at ¶25.)  On October 1, October 23, October 29 and October 21, 2002, Mr. Corrado spent 14.7 hours preparing for, attending and reviewing the deposition of Phyllis Childs, estimating that he spent four (4) hours addressing facts bearing

14

on the issues of conspiracy or gender stereotyping.  (Id. at
¶26.)

Again, Mr. Corrado's estimated fraction of time devoted to
the conspiracy and stereotyping issues is quite conservative.
This Court finds nothing excessive about the amount of time
Defendants' counsel spent on discovery and related issues in this
case and accepts counsel's good faith estimations of that portion
of time which is fairly attributable to the legal issues for
which this Court has previously deemed to be appropriate for fee
recovery in this case.  (See April 27, 2005 Opinion.)

### c.   **Fee Petition**

The Newspaper Defendants' attorney claims 23.9 hours for
preparing the instant fee petition.  This Court finds that this
time was reasonably incurred, particularly in light of the fact
that a supplemental affidavit and exhibits were requested
following the original briefing on the matter.

### 3.   **Plaintiff's Request for Fee Adjustment**

In opposing the Newspaper Defendants' application for fees,
Plaintiff argues that the fees sought are excessive and
unwarranted, arguing that Defendants have not proven that the
fees are "exclusively related to defending the plaintiff's 1983
and 1985 claims against them, they have not proven that the bills
were entered contemporaneously, they submitted 'block billed'
time entries, they have not produced the legal services agreement

15

between the insurance carrier and defense counsel, and entry level legal, paralegal and clerical work was not delegated to associates, paralegals and clerical staff of the firm but was handled by a partner." (Pl.'s Opp. Brief at 5-6.)

While Plaintiff suggests, first, that Defendants' fee application does not adequately demonstrate that the time was contemporaneously kept and reflects impermissible block billing, this Court is satisfied that Mr. Corrado's records are accurate. Mr. Corrado has attested that he recorded the time contemporaneously and the exhibits submitted with his fee application are generated from his "firm's computerized time and billing record showing all time spent on this matter . . . ." (Corrado Aff. at ¶12.) Moreover, those time entries reflect a sufficiently particularized description of the tasks performed to permit this Court to determine the permissible amount of reimbursement.

It is true that Defendants' attorney has recorded several entries in which he block-billed time (i.e. entries containing several separate tasks). While individual, line item billing records are always preferred by a court forced to evaluate the time expended in determining an appropriate fee award, the total amount of time attributed to these block activities in this instance does not strike this Court as unreasonable or inconsistent with the time one would expect to expend on the

16

activities described in those entries.  Thus, while not necessarily ideal, Mr. Corrado's time entries do not suggest that anything is amiss.  The block billings all describe necessary tasks in this case, performed on a given date.  This Court is less skeptical than Plaintiff's counsel appears to be about the billing records Mr. Corrado presents in his fee petition and supporting exhibits for days when multiple tasks in this case were performed and the time combined into one total for the day.

Plaintiff next objects to the fact that Mr. Corrado did not delegate assignments to associates, paralegals and clerical employees who would presumably bill at a lower hourly rate.  That Mr. Corrado did not delegate work on the file to others does not strike this Court as problematic.  Indeed, Plaintiff's lawsuit raised numerous and intertwined claims, with high damage amounts being claimed, whose ultimate disposition benefitted from having one individual familiar with the case and the wide breadth of relevant law concentrating on its defense to Plaintiff's objectionable scattershot legal theories.  Had Defendants' counsel delegated such work, Plaintiff could expect to see multiple billing records for many of the same tasks, as the partner would necessarily review associate work and/or conference with other attorneys.  An associate would doubtless have needed more time to do similar tasks, even if he or she had capability to do so.  Moreover, Mr. Corrado seeks compensation at a rate of

only $175/hour, which is substantially lower than that typically charged by a partner for work of this nature in a case such as this.  The Court therefore declines Plaintiff's request to reduce the amount of time claimed and/or the hourly rate on this basis.

Plaintiff also argues that a reduction is appropriate as Defendants' counsel has not complied with Local Civil Rule 54.2[3] by neglecting to provide a copy or to adequately describe the fee arrangement between Mr. Corrado, the Newspaper Defendants and the insurance carriers.  This Court, however, is satisfied that Mr. Corrado has substantially complied with the requirements of this Local Civil Rule.  Mr. Corrado sets forth in his affidavits the fact that he is being reimbursed by the insurance carriers for the Herald Newspapers, Media Professional Insurance of Kansas City, Missouri and GE Employees Reinsurance Corp. of Overland Park, Kansas and that his contract rate for services in this matter is $175.  (Corrado Supp. Aff. at ¶30.)  He has also certified that these amounts have actually been billed and that his firm has been paid in the amount of $131,944.88 through July,

---

[3]Local Civil Rule 54.2 provides in relevant part:

> (b) <u>Affidavits: Fee Agreements.</u>  Applications for the allowance of counsel fees shall include an affidavit describing all fee agreements and setting forth both the amount billed to the client for fees and disbursements and the amount paid.

L. Civ. R. 54.2(b).

18

2004.  (Corrado Aff. ¶¶ 11, 19 and 20.)  In addition, based on
the small amount of time that Mr. Corrado includes in his fee
application for work on these present issues from the far larger
amount of time billed in this matter generally, this Court does
not share Plaintiff's concern that there is any real likelihood
that "Mr. Corrado is requesting more in fees or costs than the
attorneys actually billed."  (Pl.'s Opp. Brief at 17.)
Defendant's fee application thus demonstrates more than a mere
fee agreement would.

Finally, Plaintiff objects to Defendants' counsel's
estimations of time devoted to civil rights conspiracy and gender
stereotyping issues in billing entries for motion practice and
discovery.  As a preliminary matter, this Court notes that it
acknowledged in its prior Opinion of April 27, 2005, that Mr.
Corrado might be required to "do his best to determine the
covered portion by good faith estimate" and fully anticipated
that he would do so.  (April 27, 2005 Opinion at 24.)  More
importantly, however, Plaintiff's objections fail to recognize
the reality that her lawsuit did not lend itself to the neat
segregation of hours spent on one issue rather than another, and
that this Court could easily <u>award</u> all fees reasonably incurred,
less only those fees for services that were distinctly severable
as devoted to other issues, since Defendants prevailed on <u>all</u>
issues.  Plaintiff's base claim against the Newspaper Defendants

was essentially that these defendants conspired with government officials to defame her, thereby violating her rights under the First Amendment and equal protection clause.  Plaintiff's theory was complex and convoluted, and the claims asserted against the Newspaper Defendants reflected this.  Plaintiff's attempt to undercut these good faith estimates of time is simply not faithful to the realities of this case.  The depositions taken by Plaintiff, for example, sought to establish the existence of a conspiracy among the various named defendants and required Defendants' attorney to devote substantial time to the issues of conspiracy and gender stereotyping.  Moreover, although Plaintiff did not explicitly plead conspiracy until she filed her Amended Complaint, conspiracy was always the linchpin of her civil rights claims against Defendants Zelnick and the Herald Newspapers because of their alleged collaboration with state actors.  As private actors, a claim pursuant to 42 U.S.C. § 1983 could not be sustained against these Newspaper Defendants absent a conspiracy.  See Dennis v. Sparks, 449 U.S. 24 (1980).  Plaintiff's arguments with respect to Mr. Corrado's estimations of time spent therefore are misplaced and unpersuasive.[4]

---

[4]  Plaintiff's counsel's arguments on this point are also vexatious.  No reasonable attorney would keep time sheets pegged to the exact counts of the complaint and amended complaints in a case such as this.  Moreover, Plaintiff's counsel have not shared their own time and expense records to demonstrate that anything Mr. Corrado claims herein is unreasonable.

**B.**  **Costs**

Attached as Exhibit B to his Supplemental Affidavit, Mr. Corrado provides an itemization of costs incurred in this matter. Those costs total $13,474.71, of which $9.079.07 represent deposition transcript costs.  While Mr. Corrado cannot precisely calculate what portions of those deposition transcription costs are attributable to Plaintiff's claims of conspiracy and gender stereotyping, he estimates that twenty-five percent of that total cost would be an appropriate value.  This Court agrees that one-fourth of the deposition time involved matters relevant and necessary for the defense of the claims against these Newspaper Defendants for civil rights conspiracy and gender stereotyping. Mr. Corrado's estimate is a conservative figure and the Court sees no reason based on the issues that were presented before it in this case through motion practice not to award the requested $2,269.76 in recoverable costs.

**III. CONCLUSION**

This Court has considered the fee application submitted by Defendants' counsel, and Plaintiff's counsel's objections, and finds, for the foregoing reasons that the amount of reasonable counsel fees and costs which Plaintiff must pay Defendants are:

Award Computation

```
    Barry L. Corrado, Esq.:
        Hours of services (defending claims)      151 hours
        Hourly rate                               $175.00
```

```
      Total defense fees                    $26,425.00

      Fee application hours                  23.9 hours
      Hourly rate                          $175.00
      Total fee application fees           $4,182.50

      Total attorneys' fees                $30,607.50
      Costs                                 $2,269.77
      Total                                $32,877.27
```

Thus, Plaintiff will be required to pay a total of

$32,877.27.  This payment is due within twenty (20) days.  The

accompanying Order is entered.


**September 30, 2005**                    **s/ Jerome B. Simandle**
Date                                      JEROME B. SIMANDLE
                                          United States District Judge